**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald C. FISH, a law corporation,<br><br>   Plaintiff,<br><br>vs.<br><br>Thomas G. WATKINS, III, et al.,<br><br>   Defendants. | No. CIV 03-0067-PHX-SMM<br><br>**MEMORANDUM OF DECISION & ORDER** |

Pending before the Court are several discovery-related matters, which are now fully briefed and ready for disposition by the Court: Defendants' Motion to Strike [Doc. No. 104], Defendants' Motion to Compel Production of Plaintiff's Tax Returns [Doc. No. 120][1], and Plaintiff's Motion to Quash Subpoena of Robert Hardy Falk and for Protective Order [Doc. No. 108]. After reviewing the parties' briefs and the relevant case law, the Court now issues the following Memorandum of Decision & Order.

## I. MOTION TO STRIKE

Defendants move this Court to strike Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Request for Discovery of Plaintiff's Tax Returns [Doc. No. 102], because the font used by Plaintiff in the Memorandum is smaller than Local

---

[1]This Motion was originally filed as a Brief in Support of Production of Tax Returns [Doc. No. 105], but was re-filed as a Motion to Compel on February 14, 2006 [Doc. No. 120].

Rule 7.1(b)(1) of the Rules of Practice of the United States District Court for the District of Arizona allows. Defendants emphasize that Plaintiff was previously warned by this Court in an Order filed November 26, 2003 that "any document filed with this Court that is not in compliance with the Local Rules of United States District Court for the District of Arizona will be stricken with no leave to amend." [Doc. No. 60] Plaintiff did not respond to the Motion to Strike, but instead filed an Amended Memorandum within hours of filing the offending original.

Despite its prior warning to Plaintiff, the Court will deny the Motion to Strike. At the November 23, 2005 discovery dispute hearing, the Court specifically requested briefing from both parties on the issue of the discoverability of tax returns. Because the Court finds that briefing from *both* sides is helpful to resolving the discovery dispute, the Court declines to grant Defendants' Motion.

The Court notes, though, that Plaintiff's seeming inability to comply with the most basic rules of procedure and a clear Court Order is incomprehensible. Compliance with the Local Rules, as well as this Court's Order enforcing those rules, is of paramount importance. Further noncompliance will not be tolerated by the Court.

## II. MOTION TO COMPEL TAX RETURNS

On November 23, 2005, this Court held a discovery dispute hearing as to whether Plaintiff's tax returns must be produced. As stated above, the Court requested further briefing from both parties. After considering those filings and relevant case law, the Court now issues its ruling.

Defendants argue that this Court should compel Plaintiff to produce its tax returns because Plaintiff claims lost income as damages and Defendants are unable to obtain information on "overall profitability, or the various components thereof, such as overhead costs, billing rates, income actually received, etc." (Doc. Nos. 105 and 120 at p. 4.) Defendants point out that this Court entered a Protective Order in May 2005, which protects privacy the Plaintiff's tax returns. Plaintiff, on the other hand, contends that it no longer claims lost income as damages. Rather, Plaintiff argues that it only seeks "loss of earning

1 capacity from [it] having had to work long hours in researching, writing and making
2 appearances." (Doc. No. 106 at p. 3.)  Plaintiff notes that tax returns are privileged under
3 California law, and also maintains that the compelling need for the production of tax returns
4 required by federal case law does not exist in this case.

5       Tax returns are not absolutely privileged under federal law.[2] <u>Premium Serv. Corp. v.</u>
6 <u>Sperry & Hutchinson Co.</u>, 511 F.2d 225, 229 (9th Cir. 1975); <u>see</u> <u>St. Regis Paper Co. v. U.S.</u>,
7 368 U.S. 208, 218-219 (1961).  However, "a public policy against unnecessary public
8 disclosure arises from the need, if the tax laws are to function properly, to encourage
9 taxpayers to file complete and accurate returns."  <u>Premium Serv. Corp.</u>, 511 F.2d at 229.
10 Because of the strong public policy favoring protection of tax returns, courts must determine
11 when disclosure of tax returns is warranted.  Federal courts across the nation are somewhat
12 divided on what must be demonstrated before disclosure of tax returns will be required, but
13 the majority of courts require both a showing of the tax returns' relevance and a "compelling
14 need" for the tax returns.  <u>See, e.g.</u>, <u>Aliotti v. Vessel Senora</u>, 217 F.R.D. 496, 498 (N.D.Cal.
15 2003); <u>Pendlebury v. Starbucks Coffee Co.</u>, 2005 WL 2105024, *1 (S.D.Fla. 2005); <u>Gates</u>
16 <u>v. Wilkinson</u>, 2005 WL 758793, *2-3 (N.D.N.Y. 2005).  In the interest of striking the
17 appropriate balance between privacy of tax information and the liberal federal discovery
18 policy, the Court finds that tax returns may not be ordered disclosed unless a showing of
19 relevance and of a compelling need for the tax returns is made.

20       Here, Plaintiff addresses only whether a "compelling need" exists for the tax returns,
21 seemingly conceding that the tax returns are relevant.  The Court nevertheless finds that they
22 are indeed relevant, because they pertain to a subject in dispute or are reasonably calculated
23 to lead to the discovery of admissible evidence.  <u>See</u> FED. R. CIV. P. 26(b)(1).  Hence, the
24 Court continues on to the "compelling need" portion of its inquiry.

---

[2] Plaintiff cites no authority that suggests this Court should apply California law, which is favorable to Plaintiff.  The Court finds that federal, not California, law controls, and will proceed accordingly.

- 3 -

Plaintiff argues that no "compelling need" exists because the information sought by Defendants can be derived from other sources that have already been produced. Plaintiff contends that "the reasonable value of [its] services is the average hourly rate charged to his clients, or, in the alternative, the amount of money which [P]laintiff has received as income in each of the years in question" is the appropriate method of valuing Plaintiff's time. (Doc. No. 106 at 5.) Defendants, however, argue that the Court should take factors like Plaintiff's overhead into account when considering the measure of damages.

The Court agrees with Defendants. Plaintiff seeks monetary compensation for "loss of earning capacity," and the Court finds Plaintiff's tax returns, which reveal Plaintiff's business expenses, earnings, and the like, to be the most accurate representation of at least a portion of Plaintiff's claimed damages. Without that information, Defendants would be unable to sufficiently challenge the damages element of Plaintiff's claim. Furthermore, the Court notes the privacy of Plaintiff's tax returns will be protected by the Court's May 2005 Protective Order [Doc. No. 91]. Thus, the Court finds the tax returns are relevant and that a "compelling need" for them exists, and will accordingly grant Defendants' Motion to Compel. The Court's Protective Order, filed May 16, 2005 [Doc. No. 91], remains in effect.

Finally, the Court notes the distinction between whether the tax returns are discoverable and whether the tax returns are admissible, but leaves that issue for another day.

### III. MOTION TO QUASH SUBPOENA DUCES TECUM

This Court held yet another discovery dispute hearing on December 22, 2005 regarding a subpoena duces tecum issued to Robert Hardy Falk. The Court again requested supplemental briefing from the parties, and now issues the following ruling.

Plaintiff moves this Court to quash the subpoena duces tecum issued to Mr. Falk, who represented Plaintiff in the underlying litigation and who also currently represents Plaintiff. The subject of the subpoena duces tecum is Mr. Falk's file from the underlying cause of action. Defendants subpoenaed the file, claiming that Plaintiff impliedly waived the attorney-client privilege by identifying Mr. Falk as a "non-retained expert" as to the reasonableness of his fees in the underlying litigation. Plaintiff argues that the subpoena

- 4 -

should be quashed on two grounds: attorney-client privilege and work-product doctrine. The Court will address each of those grounds in turn.

### A. Attorney-client privilege

The crux of the attorney-client privilege issue in this case is whether Plaintiff impliedly waived the attorney-client privilege by naming Robert Hardy Falk as a "non-retained expert." Rule 501 of the Federal Rules of Evidence, which governs assertions of privilege, provides that, in a diversity action such as this case, state law determines whether a privilege is available. FED. R. EVID. 501. While the parties dispute which state's privilege law applies, they both rely on Arizona law to determine whether an implied waiver of the privilege occurred. Specifically, both parties cite to State Farm Mut. Auto. Ins. Co. v. Lee, 13 P.3d 1169 (Ariz. 2000) (en banc) and to Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975) as the applicable test. ( Doc. No. 112 at 2-3, Doc. No. 113 at 2, Doc. No. 116 at 2, Doc. No. 117 at 4.) However, Plaintiff also mentions the issue of waiver in its argument that Texas law regarding privilege should govern. Even though Plaintiff's reference to Texas privilege law seems to invoke a conflict of laws question, the Court need not engage in a conflict of laws analysis because its resolution of the issue would be the same under both Arizona and Texas law for the reasons sets forth below.

#### 1. *The Arizona test for implied waiver of the attorney-client privilege*

In Lee, the Arizona Supreme Court adopted a three-factor test set out by a federal district court in Hearn on how to determine whether an implied waiver of the attorney-client privilege has occurred. Lee, 13 P.3d at 1173-74. Those factors are: (1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Id. at 1173 (citing Hearn, 68 F.R.D. at 581). The Court now addresses each of those factors.

                    a.  <u>Whether the privilege was asserted because of an affirmative act</u>

Defendants argue that Plaintiff asserted the attorney-client privilege as a result of naming Robert Hardy Falk, Plaintiff's former and current counsel, as a "non-retained expert" on the subject of his attorneys' fees in the underlying litigation.  Plaintiff does not address this factor in its initial brief, and in the responsive brief, Plaintiff only discusses factors two and three.  Thus, because this first factor does not appear in dispute, the Court will proceed to the next factor.

                    b.  <u>Whether Plaintiff put protected information at issue by its affirmative act</u>

Defendants argue that Plaintiff has impliedly waived the attorney-client privilege as to all contents of its file with Falk by taking the affirmative act of naming Falk as a "non-retained expert" who will testify as to his fees and their reasonableness.  Defendants further contend that they will be unable to rebut the reasonableness of those fees "absent evidence of the work performed."  Plaintiff counters that it has already produced an extensive privilege log to Defendants, and further argues that because an attorney's communications with his client are not required elements of a fee reasonableness inquiry, the communications are not "at issue" or relevant.

After reviewing Arizona law regarding attorneys' fees, the Court finds that the material sought by Defendants is not "at issue," thus making it irrelevant.  In reaching its conclusion, the Court notes that two factors are considered determining the reasonableness of attorneys' fees: the reasonable billing rate and the reasonable number of hours expended.  <u>Schweiger v. China Doll Restaurant, Inc.</u>, 673 P.2d 927, 931-32 (Ariz. App. 1983).  In this case, Defendants presumably take issue with at least the number of hours spent by Mr. Falk on the underlying litigation, because it ended in dismissal for lack of personal jurisdiction, yet Plaintiff claims $375,000 in attorneys' fees.  An attorneys' fee request may indeed be unreasonable in the number of hours claimed.  <u>Id.</u> at 932.  However, the case law does not reveal the practice of reviewing attorney-client communications in reviewing the reasonableness of attorneys' fees.  Rather, such tools as expert witnesses who testify on the reasonableness of the number of hours claimed to deal with certain legal issues are used.

1  Thus, if Mr. Falk were to testify on the subject of his billing rate and the number of hours
2  expended, Defendants could counter with an expert challenging the fees' reasonableness.
3  The Court is unaware of any Arizona case law finding that attorneys' fees requests waive the
4  attorney-client privilege, and the Court declines to so find. The Court therefore turns to the
5  third and final factor of the Hearn test.

            c. <u>Whether Defendants are denied vital information because of the privilege</u>

7  The Court finds that Defendants are not deprived of vital information by denying their
8  request for privileged information from Plaintiff's file. Rather, the Court finds that
9  Defendants may adequately counter Plaintiff's claim of attorneys' fees by employing
10 recognized methods under Arizona law, such as scrutinizing bills and timesheets submitted
11 by Falk.

**2.  *Texas vs. Arizona law regarding implied waiver of attorney-client privilege***

13 The Texas Supreme Court has adopted a more "rigorous" version of the Hearn test.
14 See Republic Ins. Co. v. Davis, 856 S.W.2d 158, 163 n.11 (Tex. 1993). Because the less-
15 stringent Hearn factors weigh in Plaintiff's favor, the Court finds that the result it has reached
16 would not have differed had it applied Texas law. Therefore, the Court need not embark on
17 a choice of laws analysis.

**3.  *Conclusion as to attorney-client privilege***

19 "The attorney-client privilege is one of the oldest recognized privileges for
20 confidential communications," and is "intended to encourage full and frank communication
21 between attorneys and their clients[.]" Swidler & Berlin v. U.S., 524 U.S. 399, 403 (1998)
22 (citation and internal quotation mark omitted). The Court expresses its concern at the
23 implications of finding the attorney-client privilege waived when an attorney simply testifies
24 as to the reasonableness of his billing rate and the number of hours expended. If the attorney
25 opens the door regarding privileged communications during his testimony, then the privilege
26 of course is waived. However, to find it impliedly waived simply because the attorney will
27 testify as to the two elements required by Arizona law places the attorney-client privilege in
28 unnecessary peril.

- 7 -

Therefore, Plaintiff's Motion to Quash is granted in part. (For a description of what material Plaintiff must produce, however, see section III.C. of this Order, *infra*.) Plaintiff is cautioned that testimony by Mr. Falk that is related to documents or exhibits that are privileged may require the Court to reconsider this issue. Likewise, the Court notes that Defendants are entitled to revisit the issue of waiver if information produced during discovery puts at issue the underlying integrity of the billing process.

Finally, this issue may be a subject of a Motion in Limine to the extent that a claimed privilege extends to areas outside Mr. Falk's representation of Plaintiff. However, that issue is not currently before the Court.

### B. Work product doctrine

Because Mr. Falk's file from the underlying litigation may contain material that is not privileged but that is work product, the Court will address the second basis for Plaintiff's Motion to Quash, the work product doctrine.

The Supreme Court first expressed the work product doctrine in Hickman v. Taylor, 329 U.S. 495 (1947), and Rule 26(b)(3) of the Federal Rules of Civil Procedure largely codified that opinion. See FED. R. CIV. P. 26(b)(3); Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 576 (9th Cir. 1992). The doctrine of work product is not a privilege; rather it is "a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1494 (9th Cir. 1989). The primary difference between the attorney-client privilege and the work product doctrine is that the work product immunity may be overcome by a showing of need for the materials in question, whereas the attorney-client privilege may not. Id.

Material constitutes work product if it is (a) a document or tangible thing, (b) prepared in anticipation of litigation, and (c) prepared by a party or a party's representative. FED. R. CIV. P. 26(b)(3). Work product is generally divided into two types, and the showing required by the party seeking the work product differs based on which type of work product is at issue. See Holmgren, 976 F.2d at 577. For non-opinion work product, a party must

1  demonstrate a substantial need for the sought documents or tangible things and an inability
2  to obtain the equivalent of those documents or tangible things without undue hardship. FED.
3  R. CIV. P. 26(b)(3); Upjohn Co. v. U.S., 449 U.S. 383, 400-402 (1981). Opinion work
4  product, however, is afforded special protection by Rule 26(b)(3). Upjohn, 449 U.S. at 400.
5  That protection is nearly absolute, for "opinion work product may be discovered and
6  admitted when mental impressions are at issue in a case and the need for the material is
7  compelling." Holmgren, 976 F.2d at 577.

8        The Court finds that the material at issue, Mr. Falk's file from the underlying litigation
9  constitutes work product because it consists of documents prepared in anticipation of
10 litigation by Plaintiff's representative. In their briefs, the parties address only opinion work
11 product, and therefore the Court will limit its analysis to that type of work product.

12       Defendants argue that evidence of the work Mr. Falk performed in the underlying
13 litigation cannot be discovered through any other means and that it is essential to arguing that
14 the hours billed for research are inconsistent with the filings of public record. In addition,
15 Defendants contend that the purpose of the work-product doctrine would not be frustrated
16 by ordering discovery of the file because the underlying cause of action has been terminated.
17 Plaintiff counters that Defendants do not need to learn Mr. Falk's mental impressions to
18 challenge the work he performed, particularly because the previously-disclosed pleadings and
19 billing records describe the work done by Mr. Falk.

20       The Court agrees with Plaintiff, and finds that Defendants' proffered reasons for
21 requesting Mr. Falk's opinion work product are not "compelling" and that Mr. Falk's mental
22 impressions are not at issue in this case. Indeed, the Court finds that what was actually filed
23 by Mr. Falk in the underlying case, coupled with detailed billing records, provide sufficient
24 grounds for challenging the reasonableness of Mr. Falk's fees. By definition, those materials
25 are not work-product. The Court also notes that the Ninth Circuit has not yet decided whether
26 work-product protection automatically ends with the case for which the work was performed.
27 Thus, Defendants' arguments fail and the Court finds that Plaintiff is not required to disclose
28 opinion work product contained in Mr. Falk's file from the underlying litigation.

**C. Conclusion as to Motion to Quash**

Therefore, the Court will order Plaintiff to produce all non-privileged, non-work product material from Mr. Falk's file from the underlying litigation to Defendants by March 31, 2006, keeping in mind the guidance found in China Doll regarding documentation of attorneys' fees. Plaintiff's Motion, which requested that this Court quash the subpoena duces tecum to the extent that it requests privileged material and work product material, is consequently granted.

Plaintiff also requests in its Motion that this Court enter a Protective Order; however, no proposed Order was submitted to the Court and the parties have not separately addressed this issue. Therefore, the Court will deny this portion of Plaintiff's Motion to Quash and for a Protective Order. If the parties determine a Protective Order is necessary, they may make the appropriate Motion with the proper accompanying document.

### IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendants' Motion to Strike [Doc. No. 104] is DENIED.

**IT IS FURTHER ORDERED** that Defendants Motion to Compel Production of Plaintiff's Tax Returns [Doc. No. 120] is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Quash Subpoena Duces Tecum issued to Robert Hardy Falk [Doc. No. 108] is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Plaintiff shall produce all non-privileged and non-work product materials of Mr. Falk's file from the underlying litigation to Defendants by **March 31, 2006**.

DATED this 17th day of February, 2006.

*[signature]*
Stephen M. McNamee
Chief United States District Judge